**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAR 17  P 2: 14

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

| | | |
|---|---|---|
| **DEBBIE COGHILL,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Case No.: GJH-14-2767** |
| **BOARD OF EDUCATION OF** | | |
| **PRINCE GEORGE'S COUNTY,** | * | |
| **Defendant.** | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Plaintiff Debbie Coghill ("Plaintiff" or "Coghill") brings suit against her former employer, the Board of Education for Prince George's County ("Defendant" or the "School Board"), alleging claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Presently pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 49. A hearing on the Motion was held on March 13, 2017. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion for Summary Judgment is granted.

### I.   BACKGROUND

#### A.  Factual Background[1]

Debbie Coghill was first hired by the School Board as a school bus driver on November 19, 2003. ECF No. 53-5 ¶ 1; ECF No. 49-1 at 10.[2] Coghill was transferred to the position of

---

[1] The following facts are undisputed or viewed in the light most favorable to Plaintiff. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) (describing procedure for summary judgment).

school bus aide on November 22, 2004. ECF No. 56-2 at 1; ECF No. 53-5 ¶ 1. Coghill's disability-based claims relate to her vision. In 2005, Coghill's visual acuity was recorded as 20/400 in the right eye and 20/20 in the left eye.[3] ECF No. 53-3 at 11. A later review of records by eye doctor Dr. Allan D. Jensen indicated that Coghill "was thought to have an orbital pseudotumor," "optic atrophy," and "decreased vision in her right eye." *Id.*

On May 28, 2009, while working as a bus aide, Plaintiff was "sitting on the bus and a student pulled up on the seat and stuck [her] in [the] left eye" with a fingernail. ECF No. 53-3 at 10; ECF No. 53-3 at 11. The injury caused recurring redness and irritation and progressive loss of vision in her left eye. *Id.* at 11. Dr. Todd Goodglick, another eye doctor, later stated that he followed Plaintiff for several years, and that Plaintiff had complete vision loss in her right eye and visual decline in her left eye due to trauma. ECF No. 53-3 at 2. Despite these issues, however, Plaintiff never requested an accommodation for her vision from the School Board. ECF No. 49-2 at 8. Instead, when asking for a different position, Plaintiff only told Union representative Angela Thomas that she did not want to interact with children. ECF No. 49-2 at 3.

On December 9, 2011, Plaintiff was transferred from her position as a bus aide to a position as an assistant in Food and Nutrition Services. ECF No. 56-3 at 1. Plaintiff alleges that during this time she was "talked to and treated like a child because of her vision." ECF No. 53-5 ¶ 13. In May 2012, food services supervisor Tawanna Wright allegedly reprimanded Coghill for

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] Visual acuity, or sharpness of vision, is often expressed as a fraction. *Visual acuity test*, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/ency/article/003396.htm (last visited March 10, 2017). The upper number refers to the distance in feet the patient stands from a standardized eye chart, which is typically 20 feet. *Id.* This chart, commonly called a Snellen chart, contains rows of letters in descending sizes. The bottom number of the fraction indicates the distance at which a person with normal eyesight could read the same smallest row the patient is able to read at 20 feet. *Id.* Thus, 20/20 is traditionally considered normal visual acuity. *Id.* 20/400 means that a person with normal vision could read the same row of letters from 400 feet away. Legal blindness is defined as "vision with best correction in the better eye worse than or equal to 20/200 or a visual field of less than 20 degrees in diameter." *Blindness and Vision Impairment*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthcommunication/toolstemplates/entertainmented/tips/blindness.html (last visited March 10, 2017). Plaintiff Coghill does not indicate whether her vision is measured as corrected or uncorrected.

her frequent absences and described her poor vision as "dangerous and a safety hazard." *See* ECF No. 53-2 at 2; ECF No. 52-1 ¶ 10. But Coghill again told Compliance Officer Elizabeth Davis on August 12, 2012 that she did not need accommodations. ECF No. 49-2 at 10–11. On February 13, 2013, Coghill filed a charge with the Equal Opportunity Employment Commission ("EEOC"), alleging harassment and discrimination based on race, disability, and retaliation. ECF No. 56-1.[4] Subsequently, between May and June 2013, Plaintiff alleges that she experienced abusive conduct from a co-worker, Donna Killibrew, including two incidents in which Killibrew pushed Coghill. ECF No. 53-5 ¶¶ 14–16.[5]

On November 15, 2013, while Coghill was working in food services, a large industrial screw was protruding from the door and struck Coghill on the right side of her face near her temple. ECF No. 53-5 ¶ 20–21. As a result of this injury, Plaintiff took medical leave and applied for worker's compensation. *Id.* ¶ 22; ECF No. 49-3 ¶ 8. She was under "doctor's supervision" between November 2013 and January 2014. ECF No. 53-5 ¶ 22. Plaintiff attempted to go back to work in January 2014, but she became light-headed and dizzy. *Id.* ¶ 23. She was told not to return to work until January 31, 2014. *Id.* ¶ 25. Plaintiff also obtained a doctor's note restricting her from lifting over five pounds, twisting, or bending for two weeks. *Id.* ¶ 27. When she returned to work on February 3, 2014, Coghill shared this information with her supervisor, but was allegedly sent home because there was no work for her. *Id.*

The Workers' Compensation Commission and an Independent Medical Evaluation by Dr. Edward R. Cohen found that Plaintiff had reached "maximum medical improvement" and could return to work as of February 20, 2014. ECF No. 49-3 ¶¶ 9–11. Coghill never challenged these findings. *Id.* ¶ 11. Plaintiff did not return to work, however, and on March 5, 2014, Plaintiff

---

[4] Plaintiff received her Dismissal and Notice of Suit Rights from the EEOC on May 30, 2014. ECF No. 4-2 at 1.
[5] Notwithstanding these allegations, in her deposition Plaintiff denied not getting along with Killibrew, stating that "I never have any problems with anybody, so we [were] fine." ECF No. 49-2 at 12.

received a letter from the School Board informing her that she was not in an approved leave status and to contact the School Board to discuss why she should not be terminated for misconduct or willful neglect of duty. ECF No. 53-5 ¶ 31. A meeting between the School Board, Plaintiff, and a Union representative was held on April 16, 2014. ECF No. 49-5 at 1. The School Board informed Coghill that she would be issued disability leave retroactively for February 28 through April 11, 2014. *Id.* The School Board also told Plaintiff that her insurance had been reinstated — but, Plaintiff claims, her insurance company had just informed her that her insurance had not been reinstated. ECF No. 53-5 ¶¶ 31; ECF No. 54-1 at 4. Thus, Plaintiff believed the School Board was lying, became upset, and walked out of the meeting. ECF No. 53-5 ¶ 32; ECF No. 54-1 at 4.

On April 22, 2014, the School Board offered Coghill a placement in the Transition to Work Program. ECF No. 49-4 at 1. Ms. Coghill was to report on April 22, 2014, but she was unhappy with the positions offered to her. ECF No. 49-5 at 1. Specifically, the School Board offered Coghill a position in the Print Shop, but she rejected this position because the chemicals were too strong. ECF No. 53-5 ¶ 34. Plaintiff contends that she visited the Print Shop and "experience[d] immediate vision loss from [the] chemical fumes." ECF No. 52 ¶ 23. She was also offered a position in the Records Room, but she declined because the job required her to twist and bend and lift over five pounds, and she could not see the names on the files due to her vision. ECF No. 53-5 ¶ 34. A representative from Workers' Compensation and Risk Management wrote to Coghill on April 23, 2014, warning her that "failure to report to the Transition to Work Program may jeopardize your work status and benefits with Prince George's County Public Schools." ECF No. 49-5 at 1.

Plaintiff subsequently failed to respond to two notices of *Loudermill*, or due process, hearings[6] on March 5, 2014 and June 17, 2015. ECF No. 49-6 at 1. She was then instructed to contact the Employee and Labor Relations Office by September 8, 2015, but did not do so. *Id.* Plaintiff was terminated from Prince George's County Public Schools on December 1, 2015. *Id.*

### B. Procedural History

Plaintiff filed her Amended Complaint with this Court on July 30, 2015. ECF No. 23. Plaintiff alleged violations of: I) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, II) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, III) hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and IV) retaliation under Title VII. Defendant filed its Motion for Summary Judgment on July 8, 2016. ECF No. 49. After receiving an extension until August 8, 2016, Plaintiff filed her Opposition to the Motion for Summary Judgment, ECF No. 52, on that date and then filed a Supplement to her Opposition, ECF No. 53, on August 9, 2016.[7] In her Opposition to the Motion for Summary Judgment, Plaintiff conceded that claims under the FMLA were time-barred. ECF No. 52 at 4; *see also* ECF No. 49-1 at 15.

## II. STANDARD OF REVIEW

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[6] A *Loudermill* hearing, named after the Supreme Court case *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985), refers to the opportunity for government employees to be heard prior to termination. 470 U.S. at 542.
[7] The Supplement includes, among other things, additional disputed facts, several doctors' notes and findings, and affidavits from Debbie Coghill and former President of the Union, Shirley Adams. The Motion to Strike this filing is discussed *infra.*

nonmoving party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). But this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993).

The burden is on the moving party to show "that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof." *Benton v. Prince George's Cmty. Coll.,* No. CIV.A. DKC 12-1577, 2013 WL 4501324, at *3 (D. Md. Aug. 21, 2013) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). Thus, upon a motion for summary judgment, the opposing party "may not rest upon . . . mere allegations or denials," but rather, "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248.

## III.   ANALYSIS

### A.  ADA Claims

Plaintiff brings two claims under the ADA. First, Plaintiff claims that Defendant failed to provide her with a reasonable accommodation that would allow her to work despite her vision problems. ECF No. 23 at 12. Second, Plaintiff appears to claim that she suffered a hostile work environment based on her disability.[8] *Id.* In addition to challenging the claims on the merits, Defendants argue that many of Plaintiff's claims are time-barred. *See* ECF No. 49-1 at 24; ECF

---

[8] Count III of the Complaint alleges hostile work environment under Title VII, which does not cover claims based on disability. *See Risco v. McHugh,* 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012). But Plaintiff does allege in her ADA claim in Count II that she was "ridiculed by management and staff" because of a disability and reported this "hostile work environment" to Defendant. ECF No. 23-1 ¶ 42.

No. 56 at 1–2. The Court will first address the timeliness of Plaintiff's complaint, and will then address the merits of Plaintiff's remaining claims.

### i. Timeliness of Plaintiff's Claims

Pursuant to Title VII, Plaintiffs generally must file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment practice. *See Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 713 (D. Md. 2013). This period has been extended to 300 days in Maryland. *Id.* "The exhaustion requirements and filing procedures for the ADA . . . are identical to those under Title VII." *Davis v. Montgomery Cty. Dep't of Transp.*, JFM-11-2637, 2012 WL 748392, at *3 (D. Md. Mar. 6, 2012). Here, Coghill filed her single EEOC charge of discrimination on February 13, 2013. ECF No. 56-1 at 3; *see also* ECF No. 4-2 at 1. Thus, acts occurring before April 19, 2012, including jobs transfers occurring in 2004 and 2011, are presumptively time-barred.

Plaintiff attempts to make an argument for equitable tolling of the limitations period in her Opposition, ECF No. 52 at 23. A plaintiff is entitled to equitable tolling "only if [she] shows (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Frazier v. Donahoe*, No. PWG-14-3974, 2016 WL 1045853, at *5 (D. Md. Mar. 15, 2016) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Plaintiff states first that equitable tolling applies because "the pre-2004 conduct and August 29, 2011 job transfer . . . establish Defendants' advance notice of Plaintiff's visual handicap." *Id.* Next, she contends that she "was extremely diligent in keeping her union representative informed of Defendant's notices and checking her mail for any correspondence from the EEOC regarding the status of her case," and thus "[s]he presents sufficient evidence of circumstances beyond her control from filing on time." *Id.* The Court agrees that events

7

occurring before April 19, 2012 may be admissible for the purpose of establishing notice of the disability and, indeed, Defendant has conceded that they were on notice of Plaintiff's injury. But as it regards claims for which the Defendant may be liable, courts "strictly adhere to these time limits" of filing charges with the requisite agencies, and "rarely allow equitable tolling of limitations periods." *Raiford v. Maryland Dep't of Juvenile Servs.*, No. CIV.A. DKC 12-3795, 2014 WL 4269076, at *7 (D. Md. Aug. 28, 2014) (citing *Khoury v. Meserve,* 268 F. Supp. 2d 600, 606 (D. Md. 2003)). Coghill has not demonstrated that any extraordinary circumstance stood in her way to prevent timely filing. Accordingly, any claim arising prior to April 19, 2012 is time-barred.[9]

### ii.  Failure to Accommodate

To survive summary judgment on a failure-to-accommodate claim under the ADA, the plaintiff must show that: (1) she had a disability within the meaning of the statute; (2) her employer was on notice of this disability; (3) she could perform the essential functions of the job with reasonable accommodation; and (4) her employer refused to provide those accommodations. *Jeffries v. Wal-Mart Stores E.*, No. GJH-15-473, 2016 WL 3771241, at *3 (D. Md. July 11, 2016) (citing *Rhoads v. F.D.I.C.,* 257 F.3d 373, 387 n.11 (4th Cir. 2001)). Defendants concede they had notice of the disability, but contest the first, third, and fourth elements.

---

[9] Neither side has addressed the issue of whether any claims based on events post-dating the EEOC charge filed on February 13, 2013 should be dismissed for failure to exhaust administrative remedies. That question would turn on whether those events are "reasonably related" to the EEOC charge. *Compare Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 (4th Cir. 2012) (finding claim did not satisfy exhaustion requirement where EEOC charge "dealt with different time frames, actors, and conduct than the central evidence at trial") *with Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594–95 (4th Cir. 2012) (finding exhaustion requirement satisfied where EEOC complaint and judicial complaint both involved the same disability but different requested accommodations). Because the claim is being dismissed on separate grounds and the issue has not been briefed, the Court will not resolve it here.

### a. Whether Plaintiff is Disabled

Defendant argues that "Plaintiff cannot demonstrate that her vision is a 'disability' as defined by the ADA." ECF No. 49-1 at 18. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "seeing and working among others." *Wyatt v. Maryland Inst.*, No. CIV.A. RDB-10-2584, 2012 WL 739096, at \*4 (D. Md. Mar. 7, 2012) (citing 42 U.S.C. § 12102(2)(A)).

The question of whether a plaintiff is disabled under the ADA is "a question of law for the court." *Rose v. Home Depot U.S.A., Inc.*, 186 F. Supp. 2d 595, 608 (D. Md. 2002). This determination is "an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001). In the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), Congress rejected a limited interpretation of the term "substantially limits" in favor of a broader interpretation. *See Wyatt*, 2012 WL 739096, at \*4 n.6. Thus, the applicable regulation provides that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2. The regulation further provides:

> An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

9

29 C.F.R. § 1630.2(j)(1)(ii). Of relevance here, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. However, the ameliorative effects of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity." § 1630.2(j)(1)(vi). Where useful to the inquiry, courts should also consider "the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity." § 1630.2(j)(4).

Plaintiff argues primarily that she is substantially limited in the major life activity of seeing. She alleges that she is legally blind in her right eye, and that the vision in her left eye has deteriorated to 20/50.[10] *See* ECF No. 53-5 ¶¶ 1, 7. Coghill points to a 2005 diagnosis that she "was thought to have an orbital pseudotumor" and "optic atrophy and pigment epithelial abnormalities of the macula." *Id.* ¶¶ 2, 3; ECF No. 53-3 at 11 She also includes indications from Dr. Goodglick dated June 7, 2012 that Coghill has a "history of complete vision loss in the right eye due to orbital inflammatory syndrome. She is therefore monocular. Subsequently, she has had trauma to her left eye and she has been noted to have progressive visual decline in her only good eye (left eye)." ECF No. 53-3 at 2. Plaintiff admits, however, both at her deposition and in her Opposition, that she is still able to drive, ECF No. 52 at 5; ECF No. 49-2 at 2, and that she carries a valid driver's license. ECF No. 49-2 at 2.

*Wyatt v. Maryland Inst.*, No. CIV.A. RDB-10-2584, 2012 WL 739096 (D. Md. Mar. 7, 2012) and *Foore v. City of Richmond, Va.*, 6 F. App'x 148 (4th Cir. 2001) are instructive on this issue. In *Wyatt*, a security officer suffered from glaucoma, a disease that damages the optic

---

[10] The record provides inconsistent measures of Plaintiff's visual acuity. Plaintiff states in her Amended Complaint, for example, that vision in the right eye was 20/50 in 2013, which the Court must assume is a typographical error based upon other medical records attached elsewhere. *See* ECF No. 23 ¶ 6; ECF No. 53-3 at 12.

nerve.[11] His glaucoma restricted his ability to drive at night, and thus, led to his eventual termination from his position as a building guard. *Wyatt*, 2012 WL 739096, at *1. The Court noted, however, that "[Plaintiff's] deposition testimony as well as his recent affidavit, with new details concerning the progression of his disease, demonstrate that despite his glaucoma, [Plaintiff] still drives a car during the day and at night for his personal and professional use." *Id.* at *6. Plaintiff Wyatt also held a valid Maryland driver's license which only required him to wear contact lenses and have mirrors on each side of the car. *Id.* Moreover, he had "no problem caring for himself or engaging in other major life activities." The Court held that "[a]lthough there is a potential for his glaucoma to substantially impair his major life activity of seeing in the future," he was not "substantially limited" within the meaning of the ADA. *Id.*

Similarly in *Foore*, a police officer had an uncorrectable visual acuity of 20/400 in his right eye. *Foore*, 6 F. App'x at 150. He had no depth perception, but his peripheral vision was normal. *Id.* Although the officer was considered "monocular," or possessing vision in only one eye, the Court found that he had overcome his impairment. *Id.* at 152–53. Specifically, he could read and had a driver's license. *Id.* at 152. The Fourth Circuit thus reversed the jury verdict for Plaintiff, holding that Plaintiff Foore's "visual impairment did not substantially limit any major life activity." *Id.* at 150.

Here, Plaintiff Coghill concedes in her deposition that she can drive, and indeed she acknowledged driving herself to the deposition. ECF No. 49-2 at 2. She further states that "I never had a hard time seeing. I didn't know anything about the vision until I took the eye test." *Id.* It also appears from a doctor's visit dated October 10, 2012, that Plaintiff sought treatment for pain in her hand related to boxing, again demonstrating the lack of limitation caused by her

---

[11] Kierstan Boyd, *What is Glaucoma*, AMERICAN ACADEMY OF OPTHALMOLOGY, https://www.aao.org/eye-health/diseases/what-is-glaucoma (last visited March 10, 2017).

vision. ECF No. 49-7.[12] In sum, Plaintiff has provided no evidence that she is substantially limited in the major life activity of seeing. She has thus failed to carry her burden demonstrating that she is disabled within the meaning of the ADA. *See Dahlman v. Tenenbaum*, No. CIV.A. DKC 10-2993, 2011 WL 3511062, at \*7 (D. Md. Aug. 9, 2011) (affirming that plaintiff "bears the burden of establishing she was a qualified individual with a disability"). Even if Plaintiff's impaired vision amounted to a disability, summary judgment in favor of Defendant is warranted because Coghill is not a qualified individual.

### b.  Whether Plaintiff is a Qualified Individual

Assessing whether an individual is qualified requires consideration of two inquiries: (1) can the individual perform the essential functions of the job in question, and (2) if not, would reasonable accommodations enable her to perform those functions. *See Jeffries*, 2016 WL 3771241, at \*4 (citing *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562. 579–80 (4th Cir. 2015)). "The burden is on the plaintiff to prove that she can perform the essential functions, and if not, that a reasonable accommodation by the employer would enable her to perform those functions." *Works v. Colvin*, 93 F. Supp. 3d 405, 415 (D. Md. 2015) (citing *Tyndall v. Nat'l Educ. Centers, Inc. of California,* 31 F.3d 209, 213 (4th Cir. 1994)) (internal citations omitted). Importantly, not only must an employee possess the skills necessary for the relevant position, but she "also must be willing and able to demonstrate these skills by coming to work on a regular basis." *Works*, 93 F. Supp. 3d at 415. "Unless an employee can work capably from home, an employee who does not come to work cannot perform *any* of [her] job functions, essential or otherwise." *Id.* (internal citations omitted).

Here, there is no genuine dispute that Plaintiff was either unable or unwilling to work, thus vitiating her potential status as a qualified individual. In Coghill's case, whether employed

---

[12] Plaintiff states that this injury took place while exercising to a boxing video. ECF No. 53-5 ¶ 37.

as a bus aide, food services assistant, print shop employee, or records room employee, a "regular and reliable level of attendance" was clearly a necessary element of the position. *See* ECF No. 49-1 at 21. Coghill's last full day of work was November 15, 2013. She did not work in 2014. ECF No. 49-2 at 17. She did not work in 2015. *Id.* Coghill was not terminated from PGCPS until December 1, 2015, more than two years after her November 15, 2013 injury. She was unable or unwilling to take any of the positions offered to her, and thus, she could not perform the essential function of attending work.[13]

Moreover, Coghill has admitted, both in her deposition and in a sworn statement to the Social Security Administration that she was "unable to work" because of her "disabling condition." ECF No. 49-2 at 14; ECF No. 49-8 at 1. Plaintiff continues to maintain that she is "not able to work," ECF No. 49-8 at 1, yet argues that she is a qualified individual. Regarding conflicts between previous assertions of total disability and a subsequent ADA claim, the Fourth Circuit in *E.E.O.C. v. Greater Baltimore Med. Ctr., Inc.*, 477 F. App'x 68, 74 (4th Cir. 2012) has stated that:

> When presented with an apparent conflict between the charging party's claim of disability and his status as a "qualified individual" under the ADA, the central question is whether the offered explanation for the conflict would warrant a reasonable juror's conclusion that, assuming the truth of, or the claimant's good faith belief in, the earlier statement, the claimant could nonetheless perform the essential functions of his job during the relevant time period.

*E.E.O.C. v. Greater Baltimore Med. Ctr., Inc.*, 477 F. App'x 68, 74 (4th Cir. 2012); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999) (stating that "the court should

---

[13] As is discussed further below, Plaintiff argues that the two positions offered to her were not acceptable. This argument fails. An employer is required only to offer a reasonable accommodation, not necessarily the employee's preferred accommodation. *See Fink v. Richmond*, 405 F. App'x 719, 723 (4th Cir. 2010). The record before the Court provides no basis upon which a jury could conclude that Plaintiff was willing and able to perform her job functions with or without a reasonable accommodation.

require an explanation of any apparent inconsistency with the necessary elements of an ADA claim."). In this case, Coghill has presented no explanation for the inconsistency between her sworn assertions of total disability and current assertions that she is a qualified individual, but rather, affirms in her deposition that she is unable to work. And while counsel was willing to hypothesize regarding possible accommodations for Coghill, there has been no evidence provided as to what, if any, accommodations would have allowed her to perform the essential functions of any position at PGCPS. Plaintiff has therefore not carried her burden of establishing that she is a qualified individual.

### c.  Whether Defendant Refused to Provide Reasonable Accommodations.

Even if the Court could consider Coghill to be a qualified individual, no reasonable juror could find that Defendant refused to provide reasonable accommodations. "Nearly every circuit court, including the Fourth Circuit, has held or strongly suggested that the Plaintiff bears the initial burden of requesting, identifying, or proposing a reasonable accommodation." *Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 716 n.4 (D. Md. 2013). While the ADA imposes on employers "a good-faith duty to engage in an interactive process to identify a reasonable accommodation," *Mullins v. Mayor*, No. TJS-14-2698, 2016 WL 4240069, at *10 (D. Md. Aug. 11, 2016) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)), "[t]his duty is triggered when an employee communicates her disability and desire for an accommodation." *Id.* (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015)). Further, the ADA "do[es] not require that an employer provide a disabled employee with a perfect accommodation or an accommodation most preferable to the employee," *Fink v. Richmond*, 405 F. App'x 719, 723 (4th Cir. 2010), only one that is reasonable and effective to address the employee's disability. *Dones v. Brennan*, 147 F. Supp. 3d 364, 369 (D. Md. 2015).

14

The record shows that Defendant met its burden in this respect. In 2011, the School Board allowed Coghill to transfer from a position as a school bus aide to a position as a food services assistant to limit her interactions with children — as she had requested after she was injured by a student. *See* ECF No. 49-2 at 3. In August 2012, Compliance Officer Angela Davis asked Coghill if she needed accommodations for her vision, and she said no. ECF No. 49-2 at 10–11. Following her head injury in November 2013, the School Board offered Coghill placement in the Transition to Work Program. ECF No. 49-4 at 1. She was offered positions in the Print Shop and/or the Records Room. *Id.*; ECF No. 49-5 at 1. She rejected both positions. ECF No. 49-5 at 1; ECF No. 53-5 ¶ 34. Although Plaintiff claims that the chemical fumes in the Print Shop and her inability to see the names on files in the Records Room prevented her from working in these positions, Plaintiff identified no other positions that would accommodate her needs. *See id.* Upon review of these facts in their entirety, no reasonable juror could find that Defendant refused to provide Coghill with reasonable accommodations.

Because Plaintiff cannot demonstrate a genuine dispute of material fact regarding her claim that she was disabled, a qualified individual, or that she was denied a reasonable accommodation, her ADA claim based on a failure to provide a reasonable accommodation must fail.

### iii. Hostile Work Environment

To survive summary judgment on a hostile work environment claim,[14] Plaintiff must allege that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome

---

[14] As stated *supra*, Defendant correctly notes that Plaintiff has pleaded her hostile work environment in Count III under Title VII, which does not "prohibit discrimination on the basis of disability." *See Risco v. McHugh*, 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012). Thus, while the Court will consider the allegations of hostile work environment under the ADA in Count II, Count III will be dismissed.

harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Lipscomb v. Techs., Servs., & Info., Inc.*, No. CIV.A. DKC-09-3344, 2011 WL 691605, at *12 (D. Md. Feb. 18, 2011) (citing *Fox v. Gen. Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2001)). As discussed above, Plaintiff has not established that she is a qualified individual with a disability. But even if she did, she has not put forth sufficient evidence showing "severe or pervasive" harassment.

Plaintiff must clear a "high bar in order to satisfy the severe or pervasive test." *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (distinguishing actionable "hostile work environment" from mere "rude treatment by coworkers, . . . callous behavior by one's supervisor, . . . or a routine difference of opinion and personality conflict with one's supervisor") (internal citations omitted). To prevail, Plaintiff must establish that the work environment was subjectively and objectively hostile. *Fox v. General Motors Corp.,* 247 F.3d 169, 178 (4th Cir. 2001). In deciding this factor, the Court considers the frequency and severity of the discriminatory conduct, whether it unreasonably interfered with Plaintiff's work performance, and whether it was physically threatening or humiliating, or merely consisted of offensive utterances. *Id.*

Here, Coghill claims that she "informed her supervisor that she could not work because she was in too much pain" and she "was sent home." ECF No. 23 at 13. She then contends that "[t]he actions of the Defendant were humiliating, demeaning and unnecessary." *Id.* Plaintiff continues with vague assertions that "[t]he harassment continued almost daily, and the harassment was severe in that it included false statements, denial of breaks . . . and ultimately resulting in a demotion and threats of termination." *Id.* at 14. These kinds of allegations,

particularly without evidentiary support, are insufficient to establish a hostile work environment. *See, e.g.*, *Butts v. Encore Mktg. Int'l*, No. CIV. PJM 10-3244, 2012 WL 3257595, at \*4 (D. Md. Aug. 7, 2012) (dismissing hostile work environment claim where plaintiff did not provide concrete examples and made only conclusory statements).

Plaintiff's attempt to characterize her 2011 transfer from school bus aide to food services assistant as taking place "under extreme duress" is equally unavailing.[15] That she "accepted the Food Services position under the most extreme fear and duress" is directly contradicted by her own statements in her deposition that she sought a transfer from a transportation position to a food services position to avoid more interactions with children. Moreover, this reassignment, on its face, was not objectively hostile and cannot be construed as supporting a hostile work environment claim. *See, e.g.*, *Smith v. Strayer Univ. Corp.*, 79 F. Supp. 3d 591, 602 (E.D. Va. 2015) (finding employee's reassignment from one department to another did not constitute claim for hostile work environment); *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 792 (D. Md. 2005) (recognizing that while being relocated may show a "workplace dispute" or "callous behavior" by supervisors, without more, it is not sufficient to show a hostile work environment).

Finally, Plaintiff claims that she was "talked to and treated like a child because of her vision." ECF No. 23 at 5. Specifically, Plaintiff alleges that her supervisor at Food and Nutrition Services, Tawanna Wright, informed her on a performance observation dated May 2, 2012 that she was "dangerous and a safety hazard" because of her vision. ECF No. 52-1 at 1. This

---

[15] In contrast to her failure-to-accommodate claim, in considering a hostile work environment claim, the Court may consider events that happened prior to the applicable statute of limitations on a "continuing violation theory." *See Raiford v. Maryland Dep't of Juvenile Servs.*, No. CIV.A. DKC 12-3795, 2014 WL 4269076, at \*7 (D. Md. Aug. 28, 2014); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (holding that so long as one hostile act occurred within the applicable time period, the employer may be liable for all acts forming the hostile work environment claim).

statement, even if assumed to be hurtful or offensive, and not a sincere expression of concern, is not enough to establish severe or pervasive harassment. Title VII is not "a general civility code." *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 328 (4th Cir. 2010). While such comments may be regrettable, they do not cross the line into actionable misconduct. *See id.* Summary judgment must also be granted for Defendant on Plaintiff's hostile work environment claim under the ADA.

### B. Retaliation

Finally, to establish a claim for retaliation under Title VII, plaintiff must show that 1) she engaged in a protected activity, 2) her employer took adverse employment action against her, and 3) a causal connection exists between the protected activity and the adverse action. *Reynolds v. American Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). A plaintiff is not required to prove the conduct she opposed was actually a violation of the law, she need only show that she "had a 'good faith belief' the conduct violated" the law. *Reynolds*, 701 F.3d at 154. With respect to the third element of the prima facie case, Plaintiff must prove that "but-for" the protected activity, no adverse action would have been taken against her. *See Brady v. Bd. of Educ. of Prince George's Cty.*, No. GJH-15-2196, 2016 WL 7655423, at *9 (D. Md. Dec. 7, 2016) (citing *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014)).

As an initial matter, it is unclear from the Amended Complaint what constituted the "protected activity," ECF No. 23 at 15, and Plaintiff does not address the retaliation claim in her Opposition to Defendant's Motion for Summary Judgment, ECF No. 52. Thus, the claim appears to be conceded. *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (treating issue as conceded where plaintiff's opposition did not respond to defendant's argument in summary judgment motion). Nonetheless, even assuming that Plaintiff is referring to the filing

18

of the EEOC charge, which would be protected activity,[16] Plaintiff has not created a genuine

issue of material fact with respect to the element of but-for causation. First, it is undisputed that

Plaintiff was not terminated until December 1, 2015, more than two-and-a-half years after the

charge was filed, making any claim of causation difficult to fathom. Second, it appears clear

from the record that Plaintiff was terminated because she had not reported to work since

November of 2013 and had rejected all of the School Board's efforts to bring her back to work.

Hence, summary judgment on Plaintiff's retaliation claim must be entered for the School Board.

### C. Motion to Strike

As a final matter, the Court will deny, as moot, Defendant's Motion to Strike Plaintiff's

Supplemental Response to Defendant's Motion for Summary Judgment. ECF No. 55. Defendant

filed its Motion for Summary Judgment on July 8, 2016. ECF No. 49. Responses were due on

July 25, 2016. *Id.* Plaintiff filed for an extension on July 21, 2016, which the Court granted. ECF

No. 50; ECF No. 51. After receiving the extension until August 8, 2016, Plaintiff filed her

Opposition to the Motion for Summary Judgment on that date, and then, without requesting leave

of Court, filed the Supplemental Response on August 9, 2016. Defendant then moved to strike

Plaintiff's Supplement on August 26, 2016. ECF No. 55. Pursuant to Fed. R. Civ. P. 6(b):

> When an act may or must be done within a specified time, the
> court may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a
>     request is made, before the original time or its extension
>     expires; or
> (B) on motion made after the time has expired if the party failed to
>     act because of excusable neglect.

Fed. R. Civ. P. 6(b). Here, Plaintiff did not move for an extension of time to file her Supplement

on August 9th, nor has she demonstrated excusable neglect. Additionally, under Loc. R. 105(9),

---

[16] The EEOC charge alleged violations based on race and gender, as well as disability, and thus would be covered as protected activity under Title VII.

"[b]efore filing a motion to . . . extend the time for the filing of any document . . . counsel shall attempt to obtain the consent of other counsel and shall give notice of the motion to other counsel a reasonable time before presentation of the motion to the Court." Loc. R. 105(9) (D. Md. 2016). Plaintiff did not attempt to obtain consent of opposing counsel before presenting the Supplement to the Court. ECF No. 55-1 at 3.

Plaintiff also provides no explanation for her untimely filing in her Opposition to Defendant's Motion to Strike. ECF No. 57. Rather, she appears to contend that Fed. R. Civ. P. 6(c), which provides that "any opposing affidavit must be served at least 7 days before the hearing," makes her supplement timely. ECF No. 57 at 1. She further states, "[i]t appears the Defendant is asking the Court to punish the Plaintiff because Plaintiff filed a timely motion to extend the time for responding the Motion to Dismiss." *Id.* at 2. Contrary to Plaintiff's erroneous interpretation of Fed. R. Civ. P. 6(c), the Rule clearly provides that "[a]ny affidavit supporting a motion must be served *with* the motion." Fed. R. Civ. P. 6(c)(2) (emphasis added). Thus, Plaintiff's affidavits and exhibits were due along with her Opposition on August 8, 2016. She has not established excusable neglect, nor does it appear that she could. "Excusable neglect is not easily demonstrated, nor was it intended to be." *Bredell v. Kempthorne*, 290 F. App'x 564, 565 (4th Cir. 2008). Nevertheless, out of an abundance of caution, the Court has reviewed the materials in the Supplement and finds that nothing included in the Supplement would have altered the outcome stated herein. Thus, the Motion to Strike is denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. A separate Order shall issue.

Date: March 17, 2017

George J. Hazel
United States District Judge